## No. 16,062.

### PRITCHARD ET AL. *v.* BOARD OF COMMISSIONERS OF RIO BLANCO COUNTY ET AL.

(204 P. [2d] 156)

Decided February 7, 1949. Rehearing denied March 21, 1949.

Mr. WORTH ALLEN, Mr. FRANK P. LYNCH, JR., for plaintiffs in error.

Mr. ALLYN COLE, Messrs. BROCK, AKOLT & CAMPBELL, Mr. R. A. DICK, Mr. JOHN P. AKOLT, JR., for defendants in error Magor and Land & Cattle Company

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

REFERENCE will be made to the parties as in the trial court, namely, plaintiffs in error as plaintiffs; defendants in error as defendants board of county commissioners, assessor, treasurer; and defendants R. F. Magor, R. F. Magor, Jr. and the Square S Land and Cattle Company, interveners.

The plaintiffs filed their complaint January 31, 1947 in the district court of Rio Blanco county, Colorado, praying for a judgment decreeing and determining that a certain contract entered into November 22, 1946, between plaintiffs and defendants assessor, treasurer and board of county commissioners be declared to be a legal and binding obligation of the County of Rio Blanco according to its terms and conditions and that the above named defendants acted within their power and authority in executing the contract, which is as follows:

"Contract.

"This contract made and entered into this 22nd day of November A. D. 1946, by and between the duly elected and qualified Board of County Commissioners of the County of Rio Blanco, State of Colorado, Frank W. Hossack the duly elected and qualified County Assessor of the County of Rio Blanco, State of Colorado, and C. L.

Tagert, the duly elected and qualified County Treasurer of the County of Rio Blanco, State of Colorado, parties of the first part, and E. S. Pritchard and J. L. Abbott, doing business under the firm name and style of Pritchard and Abbott, a partnership, of Fort Worth, Texas, parties of the second part; Witnesseth that:

"Whereas oil and gas deposits have been discovered in Rio Blanco County, and that certain of said deposits have been developed and are now producing oil and gas; that other deposits as yet undeveloped, are known to exist in or under lands in said county, and

"Whereas the discovery and developments aforesaid have tremendously increased the market values of certain lands in Rio Blanco County, Colorado, and

"Whereas by statute the duty to value and assess said lands for purposes of taxation is placed first upon the County Assessor of the said County and State, secondly upon the County Treasurer of said County and State and thirdly upon the Board of County Commissioners of said County and State acting as a County Board of Equalization, and,

"Whereas the Legislature of the State of Colorado has not, by statute, specifically provided a method for the valuation or assessment of oil and gas deposits, but has declared by legislative enactment (Sec. 2, Chapter 142, 1935 C.S.A.), that all property, both real and personal, shall be taxed at its full cash value, and

"Whereas the value and extent of oil and gas deposits developed and undeveloped can only be determined by a thorough and scientific investigation by highly trained experts in the field of petroleum engineering, and

"Whereas the parties of the first part do not deem themselves to have the necessary scientific knowledge, training or experience, and

"Whereas the parties of the first part, after due investigation, have determined that the parties of the second part do have the requisite technical knowledge, training and experience, and are fully qualified to furnish to the

said parties of the first part all data, facts and information necessary to enable the said parties of the first part to value said oil and gas lands and levy assessment thereon for tax purposes as required by the statutes of the State of Colorado, and

"Whereas the parties of the second part are willing to undertake to furnish all necessary scientific data, facts and information required by said parties of the first part for the purposes aforesaid,

"Now Therefore, in consideration of the mutual covenants herein contained, and the sums hereinafter agreed to be paid, the parties hereto covenant and agree as follows:

"1.  The parties of the second part covenant as follows:

"(a)  That they will compile a complete schedule of all oil and gas deposits under production or proved in Rio Blanco County, Colorado, as of March 1, 1947; such schedule shall set forth the record owners, total or fractional, of each tract, and all undeveloped leases and royalty interests adjacent thereto; production from each of said particular tracts for the previous year; estimated total production from each tract; estimated value of said tract based upon total production figures or any other base determined by said parties of the first part, and further data and/or figures which the said parties of the first part may, from time to time, require.

"(b)  To furnish all equipment, machinery, tools and manpower at their own expense, and to hold free the said parties of the first part from any claim, liability or expense due to any agent or employee of said parties of the second part.

"(c)  To make available to the County Assessor, County Treasurer and the Board of County Commissioners, all calculations, methods and figures used in determining any or all of the figures set forth in the schedule provided for in paragraph 1 (a) hereof; to appear as witnesses before the Board of Equalization of the County of Rio Blanco, and to appear before any court of record.

"(d) To deliver the schedule or schedules provided for in paragraph 1(a) on or before the 15th day of June A. D. 1947, to the County Assessor of Rio Blanco County, Colorado and copies thereof to the County Treasurer and Board of Equalization of said County and State.

"(e) That oil and gas properties for the purposes of these presents shall be defined as: Producing leases and leases adjacent thereto, producing royalties, pipe lines, refineries, tank farms, storage tanks, derricks, drilling rigs, oil well supplies, supply houses and all equipment used for producing, transporting or refining crude oil.

"2. The parties of the first part covenant as follows:

"(a) To make available to the parties of the second part all assessment rolls, tax rolls, real estate maps and records of the County of Rio Blanco, Colorado, and all of such other and further facts or documents in their possession and which are or may be pertinent to the determinations herein involved; and to render such assistance as they may legally render to the said parties of the second part.

"(b) To take any and all measures legally necessary to cause all sums earned hereunder by the said parties of the second part to be properly paid.

"(c) To pay to the parties of the second part for their services rendered as herein provided the following sum or sums in the following manner:

"Five cents (.05) on each One Hundred Dollars valuation on oil and gas properties located in Rio Blanco County when and as determined by the said parties of the first part as provided by law, and when paid to the County Treasurer without protest. The sums due hereunder shall be payable monthly commencing February 1, 1948. In the event any sums earned by the parties of the second part may or shall be based upon a tax paid under protest, then such sums shall be held by the County Treasurer until such time as the protest is finally determined by a court of competent jurisdiction.

"Provided however, that all sums earned and paid

hereunder shall not exceed the sum of Twenty-Five Thousand Dollars ($25,000.00).

"3. The parties hereto mutually covenant as follows:

"(a) That the said parties of the first part do not delegate to or authorize the parties of the second part to exercise any of the rights, powers, privileges, or duties vested in, or conferred by law upon any or all of the said parties of the first part; and the parties of the second part covenant to act accordingly.

"(b) That this contract is made and entered into subject to the provisions of the Constitution of the State of Colorado, and to the statutes of said State.

"(c) That both the total obligation and the payments to be made hereunder shall be deemed separable, and any sums or warrants issued for the payment of such sums which may be, by a final judgment not reversed by a court of final jurisdiction, declared void, shall be deemed to be separable and all other sums not in excess of any constitutional or statutory prohibition, shall be held valid and binding obligations of the County of Rio Blanco, State of Colorado.

"(d) That all other covenants and obligations (except those described in paragraph 3(c) hereof) shall be deemed separable, and in the event that a final judgment not reversed by a court of final jurisdiction shall declare any covenant, obligation, provision, paragraph or sentence, ultra vires or void, all other terms and conditions not so declared, shall be deemed to be in full force and effect at the option of the parties of the second part.

"(e) That this agreement shall be binding upon the heirs, personal representatives and successors in office of the parties hereto.

"In Witness Whereof, the parties hereto have set their hands and seals the day and year first above written."

Defendants assessor, treasurer and board of county commissioners, by answer, denied the invalidity of the contract; denied that they were without authority to

enter into the same and to employ plaintiffs for the purposes mentioned; and requested that the contract be held valid by the court.

R. F. Magor, Sr. and R. F. Magor, Jr. and the Square S Land and Cattle Company, as taxpayers, in their own behalf and that of others similarly situated, were permitted to intervene without objection.

The petition in intervention attacked the contract on the ground that it is ultra vires and void and that the county officials had no authority, express or implied, to make such contract; that the plan of payment of compensation is contrary to public policy and the amounts thereof exceed the legal limitation of county indebtedness; that plaintiffs, not being residents of Rio Blanco county, lack certain statutory qualifications for the performance of such service as contemplated.

To this petition in intervention, defendants filed answer praying that the petition be denied, but at the time of hearing on the issues, on February 27, 1947, defendants withdrew their objections to the petition to intervene. The issues as then made were on the plaintiffs' complaint and the petition of the interveners. Trial was had to the court which entered its judgment on May 5, 1947, which in effect was a finding that the contract is ultra vires, void and nonenforceable; that the county officers were without authority of law to employ plaintiffs and likewise were without power or authority of law to contract for, or to obligate the County of Rio Blanco for the payment of plaintiffs' services in the manner provided in said contract, or in any amount whatsoever; that the contract is not in any respect an obligation binding upon or effective against the County of Rio Blanco. Judgment was entered accordingly. Motion for new trial was dispensed with and the plaintiffs prosecute this writ of error.

Plaintiffs rely upon the following points: That the trial court erred in holding the contract ultra vires and nonenforceable; that the trial court erred in holding

that the county officers, or any and all of them, were without authority of law to employ plaintiffs or to obligate the county for the payment of services to be rendered by plaintiffs as provided in the contract; and that the trial court erred in holding that the contract is not a binding obligation or effective against the County of Rio Blanco.

Defendants interveners contend that the contract is admittedly invalid as to the assessor and treasurer; that that board of county commissioners is a distinct and separate entity from that of the county board of equalization and any powers or duties to which the contract may be relevant are vested in the county board of equalization and not in the board of county commissioners; that the contract is illegal, ultra vires and void because it is not within either the express or implied powers of the board of county commissioners; the contract is illegal because of the contingent compensation payment provisions.

Other minor reasons urged as to the invalidity of the contract are that the plaintiffs lack the constitutional and statutory qualifications for the employment; that the contract is invalid because of the limitations on creation of indebtedness and the method of payment; and that the contract is further in conflict with statutory provisions concerning the payment of witness fees.

Since plaintiffs seemingly admit that the contract cannot be sustained as to the county assessor and treasurer, and that the liability under the contract must be fixed as being enforceable against the board of county commissioners, and they contend that the board of county commissioners has not only the express statutory authority to enter into such a contract, but that it also has the implied power and authority to do so, we will confine our discussion to the matter of the validity of the contract and the powers of the board of county commissioners in relation thereto.

We believe plaintiffs failed to fully differentiate

between the board of county commissioners and the county board of equalization. Some looseness in this regard has been employed in our legislative acts. For permanency of the county board of equalization, it is provided by statute that whoever may be the duly qualified and acting county commissioners, such individuals automatically become the county board of equalization. When these individuals meet and sit as the county board of equalization in tax matters, the board of county commissioners is temporarily suspended and in order to perform the functions and duties of the board of county commissioners, these individuals would resolve themselves from further action as the board of equalization and take up their separate and distinct duties as the board of county commissioners.

Evidence discloses no dispute as to the facts concerning the matter involved. Recent developments in Rio Blanco County have resulted in discovery of oil underlying considerable portions of the land area of the county. A logical conclusion would be that such discovery has enhanced the value of such lands way beyond their present assessed valuation as now classed as grazing lands. The assessor, charged with the duty of fixing valuations on land for tax purposes, admits his inability to make such valuations and has no guide therefor from other sources of the state. He is convinced that such lands are not now properly valued for taxation and that the county is suffering a loss thereby; however, he is at a loss to know how to make proper valuations and sought that help by the means of this contract. His position is frank and laudable, to say the least; however, he must be left to the solution of his problem by means other than those involved by this contract.

The real position of plaintiffs seems to be, when fully considered and analyzed, that the board of county commissioners can enter into such a contract under its authority to manage the business of the county and that the underlying purpose of this contract was not to

place the matter of final valuations in the hands of plaintiffs, but to gather such information as would be an aid to the assessor in the performance of his sole statutory duty, namely, that of making the valuations in the first instance. The evil of such a contract, by which the county would be bound, lies in the fact that the assessor is not finally bound to accept the recommendations as might be made by plaintiffs. The right to employ capable assistants comes within the purview of the duties primarily conferred on the assessor and cannot be claimed as an implied power of the board of county commissioners, because by constitutional and statutory provisions the board of county commissioners, as such, has no authority to impose itself upon the express powers of another county officer.

This is not a case of where the assessor has failed or refused or omitted to place the lands mentioned on the tax rolls; therefore, the county treasurer is not called upon to act as in the case of an omission by the assessor as provided by statute.

█ Even if the board of county commissioners had any semblance of implied power, under the guise of management of the county affairs, to enter into such a contract as we have before us, other statutory means for obtaining the ends sought by the contract must first be exhausted. The legislature has seen fit to make provision for ways to meet the ends desired which prompted the making of the contract before us. Such provision is to be found in paragraph sixth of section 157, chapter 142, '35 C.S.A., which discloses some of the authority, duties and powers of the Colorado State Tax Commission, and is as follows: "Sixth—Whenever in the judgment of the tax commission, property in any county or municipal subdivision thereof has not been assessed at its true and full cash value the commission may make a reappraisement of the property therein, to the end that all classes of property in such taxing district shall be assessed in compliance with the law. When a reappraise-

ment is ordered in any taxing district the commission shall appoint an appraiser, and assistant appraisers if necessary, who shall forthwith proceed to appraise such property in such taxing district, and who shall have all the powers, shall perform all the duties pertaining to the appraisement of property and shall receive the same compensation from the same sources as provided by law for assessors of real or personal property, as the case may be. It shall require county assessors to place upon the assessment roll any property which may be found to have, for any reason, escaped assessment and taxation."

There is some evidence to the effect that the assessor presented his problem to the state tax commission and sought its aid. There is no evidence of any action on the part of the Colorado State Tax Commission in response to such request; however, its inaction might have been thought to be justified. Nevertheless, under the provisions of the statutory section just quoted, it seems to be the clear duty of the commission to do such things as are necessary to enable it to arrive at the proper "judgment" in the matter, to the end that it determines whether property has or has not been assessed at its true cash value. Action by the Colorado Tax Commission in the instant case, with all of the powers with which it is clothed, would definitely settle the problem of the assessor in this instance.

Thus, it will be seen that the express power to do the very thing sought to be accomplished by the contract here in question has been delegated by the legislature to the Colorado State Tax Commission, which, therefore, is a direct negation of any implied power that is here claimed by plaintiffs for the board of county commissioners. We feel that, in principle, the case of *Chase, et al. v. Board of County Commissioners*, 37 Colo. 268, 86 Pac. 1011, is decisive and controlling here.

■ The conclusions we have heretofore reached definitely dispose of the main issue in the case; however,

an additional reason may be justified. If any authority vested in the board of county commissioners to make such a contract, which authority we have said does not exist, the contract would otherwise be illegal because of the uncertainty as to the character of the compensation as well as its contingent nature.

The contract provides for payment to second parties, "Five cents (.05) on each One Hundred Dollars valuation on oil and gas properties located in Rio Blanco County * * * ." The underlying purpose of the contract was to furnish the assessor with information upon which he could properly base a valuation of the lands containing oil deposits and it can be rightfully assumed that there would be an increase in the assessed valuation of such properties. There could be a vast difference between the amount of the total valuation on oil and gas properties and the amount of "increase" based upon the information to be furnished by plaintiffs. The contract does not specifically provide for the compensation to be based upon the increase in valuation and is, therefore, uncertain and incapable of enforcement. In addition thereto, the contract would be void as against public policy for the reason that, due to the nature of the plan for payment of compensation, an opportunity exists to recommend an increase in the valuation thereby enhancing the amount of compensation to be received.

By such statement we are to be understood as casting no reflection whatever upon the integrity of the plaintiffs herein.

For the reasons herein stated, it is the opinion of this court that the contract before us for consideration could not be authorized in law, is beyond the power of the board of county commissioners to make and is, therefore, ultra vires, and the contract is otherwise nonenforceable and void and the judgment of the trial court was right and should be affirmed. It is accordingly so ordered.

Mr. Justice Jackson and Mr. Justice Stone concur in the result.