**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBIN L. WILLIAMS, Personal
Representative of the Estate of
Michael R. Williams,

   Plaintiff - Appellant,

v.

FRED D. McKEE; DEBBIE
GRIFFITH; DELTA COUNTY,
COLORADO,

   Defendants - Appellees.

No. 14-1426
D.C. No. 1:13-CV-02546-PAB-GPG
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH,** Chief Judge**, MURPHY**, and **BACHARACH**, Circuit
Judges.

## I. INTRODUCTION

Michael Williams brought this 42 U.S.C. § 1983 civil rights suit against

"Fred D. McKee," "Debbie Griffith," and "Delta County, Colorado." Fred

McKee is the Delta County Sheriff and Debbie Griffith is the Delta County

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Assessor. Williams alleged (1) Sheriff McKee violated his First and Fourteenth Amendment rights when he fired him from his position as Detention Officer at the Delta County Detention Facility; (2) Assessor Griffith violated his Fourteenth Amendment rights when she fired him from his position as a Delta County Appraiser; and (3) "Delta County, Colorado" was responsible for Sheriff McKee's and Assessor Griffith's actions because it "provided [them with] no or insufficient training." Williams's complaint also set out an apparent state-law claim for retaliatory discharge. The district court concluded Williams's complaint failed to state a constitutional violation as to either Sheriff McKee or Assessor Griffith. Accordingly, the district court dismissed Williams's § 1983 claims against all three named defendants with prejudice. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (holding that a governmental entity is not liable under § 1983 when there has been no underlying constitutional violation by an employee). Having dismissed all of the federal claims on the pleadings, the district court declined to exercise supplemental jurisdiction over Williams's state law claim. Williams appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

**A. Factual Background**[1]

In 2010, Williams was hired as a detention officer by the Delta County, Colorado Sheriff's Department. Detention officers are sworn deputies of the Sheriff's Department. In January 2011, Williams received a favorable written evaluation, indicating he generally met or exceeded expectations.

Williams had a bumper sticker on his privately owned pickup truck stating: "Still Voting Democrat? You're Stuck on Stupid." He did not use the truck for work and there was nothing about the truck that made it appear to be a county vehicle. Williams parked his truck on a street in front of his workplace, the Work Release Facility of the Delta County Jail.

At the end of June 2011, Williams's immediate supervisor told Williams that Sheriff McKee had received a complaint about the bumper sticker. Specifically, Sheriff McKee was contacted by a citizen complaining that the bumper sticker was offensive. When asked how he knew the truck belonged to a

---

[1]Because this court is reviewing the district court's grant of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, we draw the facts from Williams's amended complaint. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (holding that Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true"). Nevertheless, Williams incorporated by reference in the amended complaint various correspondence and Delta County personnel policies. Consideration of those documents in the context of resolving a Rule 12(b)(6) motion to dismiss is appropriate. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

county employee, the citizen said he knew because the truck was parked in front of the building where the employees park. The citizen specifically asked Sheriff McKee if he shared the views expressed in the bumper sticker. A few days later, Sheriff McKee called Williams and told him a Delta County resident was offended by the bumper sticker; Sheriff McKee asked Williams to park his truck around the side or back of the building to hide the bumper sticker.

Thereafter, Williams parked his truck in front of the building, but with blue tape covering the bumper sticker. One day in August, Williams forgot to put tape over the bumper sticker. The same concerned citizen called Sheriff McKee to report that the truck with the bumper sticker was in front of the building again. Sheriff McKee called Williams and said, "I need you to help me out here and get it covered." Williams did so. A week or two later, Williams arrived at work with the bumper sticker uncovered. Sheriff McKee told Williams to "be sure to get that tape on there before you leave the house."

On August 29, 2011, Williams asked Sheriff McKee why he could not park his private vehicle on a city street. Sheriff McKee raised his voice and said: "That city street improvement is county property and that is my building, end of discussion." This encounter caused Williams significant stress. Williams wrote a letter to Sheriff McKee requesting a leave of absence. Sheriff McKee found Williams's letter to be offensive; other employees of the Sheriff's Department agreed with Sheriff McKee's assessment of Williams's letter. In particular,

Undersheriff M.L. Taylor told Sheriff McKee that Williams should be terminated immediately based on the tone of the letter.

After August 29, 2011, Williams parked his truck, with the bumper sticker uncovered, on the street near the Work Release Facility. On September 20, 2011, Sheriff McKee wrote Williams, stating:

> In your letter the manner in which you reply to these issues indicates that you have no intention to comply with [the request to park the truck on the west side or behind the building]. I find that this level of insubordination to be intolerable and effective immediately, your employment with the Delta County Sheriff's Department Sheriff's office is terminated.

Thereafter, Williams filed for state unemployment benefits. The relevant state entity found that Williams's behavior was not rude or offensive within the meaning of Colo. Rev. Stat. § 8-73-108(4), (5)(e)(XIV) and awarded him benefits.

In April 2013, Williams was hired as an entry-level appraiser by the Delta County Assessor's Office. Williams learned the technological applications at a fair pace, requiring decreasing supervision over time, and followed instructions on prioritizing assignments. In June or July 2013, Williams had a phone conversation at work about the possibility of filing a lawsuit against Sheriff McKee. One of his co-workers heard the conversation and asked Williams if he was suing Sheriff McKee; Williams responded that he was unsure. On September

18, 2013, Williams filed the instant suit,[2] alleging Sheriff McKee violated his rights under the First and Fourteenth Amendments by terminating his employment and Delta County violated the same constitutional rights by failing to sufficiently train Sheriff McKee. On September 25, 2013, the same co-worker overheard Williams discussing the lawsuit with his attorney. She asked if Williams was suing Sheriff McKee; Williams responded in the affirmative. The co-worker communicated this information to Assessor Griffith that same day. Two hours later, Assessor Griffith terminated Williams's employment.

## B. Procedural Background

On December 13, 2013, Williams filed an amended complaint. In addition to the claims for relief set out in the original complaint, the amended complaint asserted that (1) Griffith violated Williams's Fourteenth Amendment right to due process by failing to follow Delta County personnel policies prior to his termination; (2) Delta County ratified his terminations; and (3) Griffith discharged Williams in retaliation for filing a lawsuit in violation of Colorado law.

Sheriff McKee, Assessor Griffith, and Delta County (hereinafter referred to collectively as "Defendants") responded to Williams's amended complaint by filing a joint motion to dismiss. The Defendants sought dismissal of all claims

---

[2]Williams died on November 16, 2013. His wife, Robin Williams, the personal representative of his estate, was substituted as plaintiff.

-6-

against Delta County on the ground Williams's complaint did not comply with the provisions of Colo. Rev. Stat. § 30-11-105. *See Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) (applying of § 30-11-105 to a suit against a Colorado county brought in federal court). Section 30-11-105 provides: "In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of . . . .'" In contrast to the provisions of § 30-11-105, Williams's complaint named "Delta County, Colorado" as the relevant municipal entity. Alternatively, the Defendants contended that Williams's suit against Delta County failed as a matter of law. In that regard, they argued that under Colorado law a county, acting through its board of commissioners, has no ability to control the employment decisions of a sheriff or assessor. *See Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1219 (10th Cir. 2002) (en banc) (discussing, in the context of an ADA suit, provisions of Colorado's constitution and statutes that render a sheriff independent from county commissioners); *see also Gonzales*, 403 F.3d at 1182 n.7 (discussing same concept in context of suit under 42 U.S.C. § 1983); Colo. Const. art. XIV, §§ 6, 8 (providing, as is the case with the office of sheriff, that an assessor is an elected official separate and distinct from the board of county commissioners); *Pritchard v. Bd. of Cty. Comm'rs*, 204 P.2d 156, 160 (Colo. 1949) (en banc) ("The right to employ capable assistants comes within the purview of the duties primarily conferred on the assessor and cannot be claimed

as an implied power of the board of county commissioners, because by constitutional and statutory provisions the board of county commissioners, as such, has no authority to impose itself upon the express powers of another county officer."). Because the allegations in Williams's complaint were limited to a claim that Delta County was responsible for the allegedly improper terminations of Williams by Sheriff McKee and Assessor Griffith through the failure to provide adequate training, and because Delta County had no authority to control the employment decisions of the sheriff and assessor, the Defendants asserted Williams's claim against Delta County failed as a matter of law.

The Defendants asserted that, even assuming Sheriff McKee terminated Williams for refusing to park his truck away from the front of the Delta County Detention facility, he did not violate Williams's First Amendment rights. In so arguing, they noted this court had held consistent with the First Amendment much farther reaching restrictions on the speech of law enforcement personnel than are at issue in this case. *See Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1271-75 (10th Cir. 1998). Alternatively, even assuming a First Amendment violation on the part of Sheriff McKee, the Defendants asserted he was entitled to qualified immunity because the law was not clearly established. As for Williams's due process claim, the Defendants asserted the claim failed because Williams did not have a property interest in continued employment, *Dickeson v. Quarberg*, 844 F.2d 1435 (10th Cir. 1988), and because Williams had not asserted

facts necessary to support the existence of a liberty interest. They asserted Williams's due process claim against Assessor Griffith failed for the same reasons.

Finally, the Defendants asserted Williams's claim for retaliatory discharge was a state-law tort claim that failed as a matter of Colorado law because Williams did not comply with the notice provisions of the Colorado Governmental Immunity Act. *See* Colo. Rev. Stat. §§ 24-10-106(1), -118(2)(a).

In response to the Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss, Williams filed a request to file a second amended complaint. The sole change set out in the proposed second amended complaint was the alteration of the caption to name the Board of Commissioners of Delta County (rather than Delta County) so that the complaint was consistent with Colo. Rev. Stat. § 30-11-105.

The district court granted Defendants' motion to dismiss. Relying on *Horstkoetter*, the district court concluded Sheriff McKee's interest in maintaining the appearance of political neutrality outweighed Williams's interest in speech. The district court concluded Williams's due process claims against Sheriff McKee and Assessor Griffith failed because Williams did not have a property interest in continued employment at either job and because, as a matter of Colorado law, personnel polices established by the Board of Commissioners of Delta County did not bind either the Sheriff or the Assessor. Because Williams's claims against Sheriff McKee and Assessor Griffith failed as a matter of law, the district court

denied Williams's motion to amend as moot. *See Hinton*, 997 F.2d at 782.

Finally, the district court declined to exercise pendent jurisdiction over

Williams's state-law claim for retaliatory discharge. *See Brooks v. Gaenzle*, 614

F.3d 1213, 1229 (10th Cir. 2010) (recognizing that when all federal claims are

dismissed before trial, a district court should generally decline to exercise

pendant jurisdiction over state-law claims).

## III. ANALYSIS

### A. Motion to Dismiss

#### 1. Standard of Review

This court reviews the district court's grant of a Fed. R. Civ. P. 12(b)(6)

motion de novo. *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014). To

survive a motion to dismiss, a complaint must "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For that

reason, a plaintiff cannot rely on "labels and conclusions, [or] a formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus,

this court "disregard[s] conclusory statements and look[s] only to whether the

remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*

*v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## 2. First Amendment Claim

On appeal, Williams maintains the amended complaint sets out a valid First Amendment claim. "When the government is acting as an employer, rather than as a sovereign, the First Amendment does not apply with full force." *Horstkoetter*, 159 F.3d at 1271. "Although the government, acting as an employer, cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression, a government employer may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *Id.* (quotations and citation omitted). To determine whether a public employer has infringed an employee's First Amendment rights, this court applies a four-part test, known as the *Pickering/Connick* test. *Id.* A plaintiff must show (1) he was not speaking pursuant to his official duties; (2) the speech was on a matter of public concern; (3) the employer's interest in fostering efficiency in the workplace did not outweigh the employee's First Amendment interest; and (4) the protected conduct motivated the adverse employment action. *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012). In its present posture, this case turns exclusively on the third element—whether Sheriff McKee's interest in efficiency in the workplace outweighed Williams's First Amendment interest. That is, for purposes of their motion to dismiss, the Defendants conceded Williams's speech was unrelated to his official duties and touched on a matter of

public concern, but asserted Sheriff McKee's interest in limiting Williams's speech via parking limitations outweighed Williams's interest in displaying his bumper sticker while Williams was on duty and his car was parked in front of the Delta County Detention Facility. This balancing of interests raises a question of law subject to de novo review. *Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998).

As this court made clear in *Horstkoetter*,

[f]or over a century, courts have upheld regulations, such as the federal Hatch Act, curtailing the rights of public employees to engage in certain kinds of political speech. These regulations were enacted to further several legitimate and important interests of government, including the following: (1) the protection of public employees' job security; (2) the eradication of corruption; (3) the promotion of efficiency in government offices; and (4) the encouragement of impartiality, and the public perception of impartiality, in government services.

These permissible restrictions on political speech can also apply to employees of state and local governments, including law enforcement officers.

159 F.3d at 1271-72 (citations omitted). At the very least, the third and fourth of these "important interests of government" are implicated in this case.[3] The

_____

[3]*See Waters v. Churchill*, 511 U.S. 661, 674–75 (1994) (plurality opinion) (stating "[g]overnment agencies are charged by law with doing particular tasks," "[a]gencies hire employees to help do those tasks as effectively and efficiently as possible," and "[w]hen [an employee] . . . begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her"); *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 565 (1973) (stating public employees "are expected to enforce the
(continued...)

-12-

amended complaint makes clear a concerned citizen called Sheriff McKee to complain about the offensive nature of the bumper sticker on several occasions. The citizen knew the bumper sticker was associated with an employee of the Sheriff's Department because it was parked in a location associated with employees of the detention facility. The citizen told Sheriff McKee "he found it very disconcerting to be called 'stupid' every time he drove by" the detention facility.[4]

---

[3](...continued)
law . . . without bias or favoritism" and "[a] major thesis" of restrictions on federal employees engagement in partisan political activity "is that to serve this great end of Government—the impartial execution of the laws—it is essential that federal employees" not become involved in politics).

[4]The existence of these complaints by a concerned citizen satisfy the "particularized showing" requirement, assuming it is applicable, discussed in *Horstkoetter*. *See* 159 F.3d at 1273 n.4. In both the appellate briefing and at oral argument, Williams asserted the district court's grant of Defendants' motion to dismiss was improper because paragraph fifty-two of the amended complaint asserts as follows: "No conduct of [Williams] adversely affected the morale, rules, ethics or efficiency of the Delta County Sheriff's Department . . . or had the tendency to disrupt confidence in the operation of the services or public respect for . . . the Delta County Sheriff's Department . . . ." As the Supreme Court has made clear, however, although we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The amended complaint, together with the correspondence between Sheriff McKee and Williams incorporated therein, make clear that there was, in fact, disruption of the kind identified in *Horstkoetter* as inimical to the government's interests in workplace efficiency and maintaining the appearance of impartiality. All that being the case, this court easily concludes that the conclusory and formulaic allegations set out in paragraph fifty-two of the amended complaint add nothing meaningful to this court's analysis of the

(continued...)

The question then becomes whether Sheriff McKee's interests, under the particular set of facts at issue in this case, in maintaining an efficient workplace and maintaining the appearance of impartiality outweighs Williams's First Amendment right to speak. We answer that "case-specific" question in the affirmative. *See Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000) (noting the "case-specific nature" of *Pickering* balancing); *see also Pickering v. Bd. of Ed. of Twp. High Sch.*, 391 U.S. 563, 569 (1968) ("Because of the enormous variety of fact situations in which critical statements by teachers and other public employees may be thought by their superiors, against whom the statements are directed to furnish grounds for dismissal, we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged.").

There is no doubt that Williams's interest in engaging in political speech is strong. *See Horstkoetter*, 159 F.3d at 1273. Nevertheless, it is important to note that Williams's bumper sticker went well beyond a law enforcement officer's mere expression of political support for, or opposition to, a partisan cause, a type of expression subject to wide regulation in both the federal and state realms. *Id.* at 1271-72. Instead, as is self-evident from the face of the bumper sticker—"Still Voting Democrat? You're Stuck on Stupid"—the language could easily spark

---

[4](...continued)
propriety of the district court's grant of Defendants' motion to dismiss.

-14-

conflict with fellow employees or the public.[5]  For that reason, Sheriff McKee's interest in maintaining the appearance of impartiality  and ensuring workplace efficiency is particularly heightened.  *Letter Carriers*, 413 U.S. at 565 ("[I]t is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded . . . .").  Furthermore, it is important to note the limited nature of Sheriff McKee's restriction on Williams's right to speak.  That is, Sheriff McKee did not order Williams to remove the bumper sticker from his truck or to cover it when the truck was, at any time, on the road or visible to the public.  Instead, Sheriff McKee directed Williams to not park the truck, with the bumper sticker exposed, in the area immediately in front of the detention facility, an area at least one citizen of Delta County knew was associated with Sheriff's Department employees who worked at the detention facility.

When all the factual averments set out in the amended complaint are considered, this court concludes Sheriff McKee's interests in maintaining the appearance of impartiality and ensuring workplace efficiency outweigh

---

[5]As Williams's complaint makes clear, the speech at issue here caused confrontation and assertions of insubordination not only between Williams and Sheriff McKee, but also between Williams and others in his line of command. Thus, as is true for Sheriff McKee's interest in maintaining an appearance of impartiality, *supra* n.4, Sheriff McKee's interest in maintaining an efficient workplace is concrete and actual, not theoretical.

Williams's interest in engaging in the particular type of speech at issue in this case. Indeed, it would be quite logically incongruent to conclude Sheriff McKee violated Williams's First Amendment rights by imposing the targeted speech limitation discussed above in response to a citizen's complaint about particularly sarcastic partisan speech, when this court's decision in *Horstkoetter* allows for the imposition of significantly more far-reaching restrictions on the partisan political speech of all law enforcement officers in a given municipality based on the abstract (but undoubtedly important) interest in preserving the appearance of political neutrality. 159 F.3d at 1271-72.

To summarize, Williams's complaint reveals a law enforcement officer intent on engaging in particularly sarcastic speech—in the form of a bumper sticker on a truck parked in an area adjacent to the detention facility associated with employees of the Sheriff's Department—while on duty. That speech led a citizen to question Sheriff McKee's political impartiality. The speech limitation imposed by Sheriff McKee was narrowly tailored to address the citizen's concern by having William's park his truck behind the detention facility while he was on duty. There was no limitation on Williams's ability to display the bumper sticker at any other time or in any other venue. Williams's interactions with Sheriff McKee regarding the speech limitation and Williams's failure to follow the chain of command in his efforts to evade or eliminate the limitation caused actual conflict within the Sheriff's Department. Given this particular set of facts, this

court concludes Sheriff McKee's interests in maintaining the appearance of impartiality promoting workplace efficiency outweighed Williams's interest in displaying the bumper sticker. *See Worrell*, 219 F.3d at 1207 (noting the "case-specific nature" of *Pickering* balancing). Thus, the order of the district court granting Defendants' Rule 12(b)(6) motion as to Williams's First Amendment claim is affirmed.[6]

---

[6]None of the cases cited by Williams on appeal address an even remotely similar factual milieu to the one presented in this case and are, therefore, not particularly helpful. For that reason, there is no need to document our analysis of those authorities. For that same reason, even if this court were to conclude Williams's complaint stated a First Amendment violation, we would still affirm the district court's entry of judgment in the Defendants' favor on the basis of qualified immunity. *See Worrell v. Henry*, 219 F.3d 1197, 1215 (10th Cir. 2000) (noting that this court can reach the issue of qualified immunity on appeal if it was raised and briefed before the district court); *Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000) ("When qualified immunity is raised in a Fed. R. Civ. P. 12(b)(6) motion, the plaintiff must carry the burden of establishing that the defendant violated clearly established law. Thus, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right." (citation and quotation omitted)).

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quotation omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted).

(continued...)

-17-

### 3. Due Process Claims

Pursuant to the Fourteenth Amendment's Due Process Clause, a state may not deprive an individual of liberty or property without due process of law. U.S. Const. amend. XIV, § 1. Williams had a protected property interest in his government jobs only if he had a "legitimate claim of entitlement to" the jobs grounded in an "independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). State law may take the form of "state statutes, local ordinances, established rules, or mutually explicit understandings." *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994) (quotation omitted).

Under Colorado law, an employee is presumed to be employed at-will and can be terminated "without cause or notice" without giving rise to a cause of action. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987) (en banc). Local government employees are no different. That is, they "hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law." *Fremont RE–1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987) (en banc) (quotation omitted). This rule does not apply, however when the employee

---

[6](...continued)
As this court's above discussion demonstrates, it is impossible to conclude the existing case law indisputably mandates a ruling in Williams's favor. That being the case, even if he were not entitled to prevail on the merits, Sheriff McKee would be entitled to judgment on the basis of qualified immunity.

has "tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007). A sheriff in Colorado "may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will." Colo. Rev. Stat. § 30-10-506.

Williams's complaint alleges as follows:

> Under §§ 9.4 and 9.6 of the Delta County Personnel Policies, an employee is required to be given 10 working days' notice prior to the effective date of his termination unless the Department Head or Elected official agrees to permit a shorter period of notice due to extenuating circumstances. . . . [U]nder §8.3 of the Delta County Personnel Policies, so long as the County will not be placed at risk, an employee facing possible discipline is to be provided reasonable written notice of such discipline (usually three (3) working days.).

Relying on these provisions, Williams's complaint asserts Sheriff McKee and Assessor Griffiths violated his due process rights by denying him "notice of right to appeal," "an opportunity to challenge his termination by responding in writing at a hearing," an "opportunity to present evidence," and an opportunity to "seek a hearing."

Williams's assertion that the Delta County Personnel Policies grant him a property interest in his position in the Sheriff's department is at odds with this court's precedents. As we made clear in *Bristol*:

> Under the Colorado constitution, the County Sheriff is a distinct position, separate from the Board of County Commissioners. *See* Colo. Const. art. XIV, § 6 (election of County Commissioners); § 8 (election of Sheriffs and other county officers). Sheriffs have

-19-

exclusive control over the hiring and firing of their employees, Colo. Rev. Stat. § 30–10–506, and even self-imposed limitations on their right to discharge employees at will are invalid, *Seeley v. Bd. of County Comm'rs*, 791 P.2d 696, 700 (Colo.1990) (en banc). Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances— a power exclusively vested in the Colorado Sheriffs with respect to their deputies. Colo. Rev. Stat. § 30–10–506; *Seeley*, 791 P.2d at 699.

312 F.3d at 1219. The same rule is true of the County Assessor. Like the Sheriff, the Assessor is an elected official separate and distinct from the Board of County Commissioners. *See* Colo. Const. art. XIV, § 6 (election of County Commissioners); § 8 (election of Assessors and other county officers). Furthermore, "[t]he right to employ capable assistants comes within the purview of the duties primarily conferred on the assessor and cannot be claimed as an implied power of the board of county commissioners, because by constitutional and statutory provisions the board of county commissioners, as such, has no authority to impose itself upon the express powers of another county officer." *Pritchard v. Bd. of Cty. Comm'rs*, 204 P.2d 156, 160 (Colo. 1949) (en banc). Because the county policies upon which Williams relies do not apply to employment decisions undertaken by Sheriff McKee and Assessor Griffith, they do not create a property interest and Williams's due process claims necessarily fail.

Williams seems to recognize as much in the briefing on appeal. *See* Appellant's Opening Br. at 60 ("[Colorado] law may allow [a] sheriff to revoke

-20-

appointments at will. The personnel manual may not have given [Williams] a legitimate claim of entitlement in continued employment." (record citation omitted)). Nevertheless, Williams maintains the complaint states a valid due process claim, asserting for the first time that the terminations deprived Williams of a liberty interest, thereby entitling him to a name-clearing hearing. There are two problems with Williams's assertion in this regard. First, this court generally does not consider arguments raised for the first time on appeal. *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 974 (10th Cir. 2015). Williams has proffered to this court no reason to deviate from this general rule. Second, even if this court overlooked the waiver, there are simply no facts in the amended complaint to support the assertion that either termination implicated a liberty interest. *See Evers v. Regents of Univ. Of Colo.*, 509 F.3d 1304, 1308 (10th Cir. 2007) (holding that to establish a liberty interest claim in this context a plaintiff must demonstrate the following: "First . . . the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published. These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest." (quotation omitted)).

Because the personnel policies upon which Williams relies do not create a property interest, and because any claim as to the implication of a liberty interest

is both waived and not supported by the allegations in the amended complaint, the district court correctly granted the Defendants' Rule 12(b)(6) motion to dismiss Williams's due process claims.

## B. Remaining Matters

### 1. Motion to Amend

As set out above, the district court correctly concluded Williams's complaint failed "to state a claim upon which relief can be granted" as to all claims premised on § 1983. Fed. R. Civ. P. 12(b)(6). Because a governmental entity may not be held responsible under § 1983 where there has been no underlying constitutional violation, *Hinton*, 997 F.2d at 782, the district court correctly denied as moot Williams's motion to file a second amended complaint, the sole purpose of which proposed amendment was to properly name the Board of Commissioners of Delta County as the municipal entity defendant.

### 2. Discovery Sanction

The district court entered a scheduling order on February 3, 2014; the order specified that Fed. R. Civ. P. 34 requests for production were limited to twenty-five per side. On February 11, 2014, Williams submitted twenty-five requests for production. Defendants responded to Williams's requests. Despite having already served the maximum number of requests allowed in the scheduling order, Williams submitted a second request for production on March 31, 2014; this request contained thirteen categories. Defendants objected to Williams's requests

as in excess of the discovery limits ordered by the district court. Defendants further noted that Williams had submitted some duplicate requests, but indicated they would consider voluntarily answering requests in excess of the court mandated limits if Williams would reduce and more narrowly tailor the requests. Williams submitted a third request for production dated April 8, 2014; this request contained twenty-two categories. Defendants again objected, noting the requests exceeded the court-ordered discovery limits. Williams submitted a fourth request, covering an additional eighteen categories, on April 28, 2014. Including these last eighteen, Williams's requests under Rule 34 totaled seventy-eight.

Defendants filed a motion for a protective order. In response, Williams filed a belated motion to increase the discovery limits. The district court granted Defendant's motion for a protective order, ruling as follows:

> . . . . [Williams] did not seek or obtain leave of Court to submit requests for production of documents beyond the 25 requests approved by the Court.
>
> As to each of [Williams's] second, third and fourth requests for production and/or inspection, Defendants' counsel communicated through written letters to [Williams's] counsel that the requests exceeded the limits set forth by the Court's Orders, and attempted to cooperate and reach a compromise with [Williams] by narrowing the scope of the questions and/or removing duplicate requests. Defendants' counsel also spoke by telephone with [Williams's] counsel. [Williams's] counsel was advised that Defendants would seek the Court's protection if leave to exceed the limits was not obtained or a compromise could not be reached. Instead of seeking

leave or reaching a compromise, [Williams] continued to submit additional requests for production of documents to Defendants.

The number of requests submitted by [Williams] exceeds the authorized amount by more than three times (78 total) the amount authorized. The Court finds that the excessive amount of requests over the authorized limits was posed for the purpose of annoyance, oppression or undue burden or expense. The Court further finds that Defendants have demonstrated good cause for issuance of a protective order and the appropriate remedy is to forbid the discovery.

THE COURT HEREBY ORDERS THAT, for the foregoing reasons, Defendants' Motion for Protective Order is granted. [Williams] is forbidden from submitting more than 25 requests for production of documents to Defendants. [Williams] reached that limit in the request for production of documents submitted to Defendants dated February 11, 2014.

THE COURT FURTHER ORDERS THAT, Defendants are hereby awarded their expenses, including attorney's fees, incurred by Defendants in responding to [Williams's] excessive requests and this Motion.

Williams seeks to appeal the district court's entry of a protective order,

denial of the motion for additional discovery, and imposition of attorney's fees.

Nevertheless, the entirety of Williams's merits briefing of the issue is as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonabl[y] calculated to lead to the discovery of admissible evidence. Rule 26 (b) (1), F.R.C.P.

Appellant's Opening Br. at 65-66.  Williams's complete failure to grapple with the substance of the district court order results in a waiver.  Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure requires the argument section of an appellant's brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  *MacArthur v. San Juan Cty.*, 495 F.3d 1157, 1160 (10th Cir. 2007) (quotation omitted).  "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).  That Williams makes an effort, though still insufficient to comply with the dictates of Rule 28(a)(9)(A), to brief the issue in the reply brief does not alter the result.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." (brackets and quotation omitted)).[7]

---

[7]Even if this court overlooked Williams's failure to adequately brief this issue, we would affirm the district court.  The record demonstrates no explanation on the part of Williams for the failure to seek leave of the court before filing multiple production requests in clear excess of the limits set out in the scheduling order.  Furthermore, the record demonstrates that many of Williams's requests for production were duplicative of earlier requests to which the Defendants had already responded.  Finally, the record demonstrates the Defendants proactively attempted to reach a compromise on the requests for additional production, but that Williams was not willing to reach such a compromise.  All this being the case, this court certainly cannot conclude the district court's denial of Williams's belated motion for additional requests for production and its imposition of

(continued...)

-25-

### 3. Treatment of State-Law Retaliatory Discharge Claim

Williams's amended complaint asserts a claim against Assessor Griffith for retaliatory discharge. The district court concluded the claim arose under Colorado state law, and declined to exercise pendant jurisdiction over the claim after dismissing all federal claims on the merits pre-trial. Although Williams's brief is less than clear, it is possible to read the brief as challenging the district court's decision in that regard. That is, Williams's brief argues the amended complaint set out a valid, meritorious claim for retaliatory discharge. *See* Appellant's Opening Br. at 61 (citing *Maxfield v. Bressler*, 20 F. Supp. 3d 1084, 1092-1094 (D. Colo. 2013) for the proposition that the amended complaint "successfully stated a claim for wrongful discharge in violation of public policy").[8] To the extent Williams's brief can be read to suggest the district court erred when it declined to reach the merits of the state-law claim, that assertion is

---

[7](...continued)
sanctions was manifestly unreasonable. *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) ("As a general rule, the imposition of sanctions for abuse of discovery . . . is a matter within the discretion of the trial court. A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable [judgment]." (quotations and alteration omitted)); *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) ("We review a district court's denial of a motion for further discovery for abuse of discretion.").

[8]To be clear, the entire discussion in *Maxfield v. Bressler* referenced by Williams discusses the contours and elements of a Colorado state-law claim for wrongful discharge in violation of public policy. 20 F. Supp. 3d 1084, 1092-94 (D. Colo. 2013).

frivolous. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (footnote omitted)).

Alternatively, it is possible to read Williams's brief to stand for the proposition that the retaliatory discharge claim set out in the amended complaint does not arise under Colorado state law but, instead, under federal law. That is, Williams's brief suggests the retaliatory discharge claim arises under the anti-retaliation provisions of Title VII. *See* Appellant's Opening Br. at 65 ("It is an unlawful practice for an employer to discriminate against any of its employees because he has opposed any practice made unlawful by this [title] or has made a charge. 42 U.S.C. §2000e-3(a)."). Even if this court assumes at least some aspect of Williams's retaliatory discharge claim arises under Title VII and the district court erred in failing to discuss that claim before dismissing all federal claims on the merits, any such error is harmless because that claim is patently frivolous.

Section 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has *opposed any practice made an unlawful employment practice by this title*."

Contrary to Williams's implicit assertion, section 2000e-3(a) is not some type of super statute that prohibits each and every kind of potential retaliation on the part of an employer. Instead, Title VII, inter alia, makes it an improper employment practice to condition employment on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *see also Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("Opposition to an employer's conduct is protected by § 2000e–3(a) only if it is opposition to a practice made an unlawful employment practice by [Title VII]. Title VII does not prohibit all distasteful practices by employers." (quotation omitted)). Because there is no hint of an allegation in Williams's complaint that either Sheriff McKee's or Assessor Griffith's actions were in retaliation for any matter falling within the purview of Title VII, any claim in Williams's complaint based on § 2000e-3(a) fails as a matter of law.

## IV. CONCLUSION

For those reasons set out above, the relevant orders of the United States District Court for the District of Colorado are hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

*Williams v. McKee*, Case No. 14-1426

**BACHARACH**, J., concurring.

I join virtually all of the panel's well-written, well-analyzed order and judgment. Unlike my esteemed colleagues, however, I would not reach the issue of qualified immunity. Thus, I do not join footnote 6 of the order and judgment.

In that footnote, the majority concludes that the plaintiff failed to satisfy the second prong of qualified immunity. In my view, however, Sheriff McKee did not argue in district court that the plaintiff had failed to satisfy this prong of qualified immunity.[1] Instead, Sheriff McKee argued only the first prong.

This approach would not necessarily preclude Sheriff McKee from seeking affirmance based on the second prong. *Cox v. Glanz*, 800 F.3d 1231, 1244-46 & n.7 (10th Cir. 2015). But Sheriff McKee has not raised qualified immunity in our court.

As a result, no one in district court or our court has ever briefed an issue involving the second prong of qualified immunity. And there is no need for us to raise an issue on the second prong of qualified immunity because the underlying claim otherwise fails as a matter of law. In these

---

[1] The majority states that "the Defendants asserted [Sheriff McKee] was entitled to qualified immunity because the law was not clearly established." Maj. Op. at 8. I respectfully disagree with this characterization.

circumstances, I would decline to reach the second prong of qualified immunity.